[ECF No. 3]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JANE DOE (C.M.),<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>RED ROOF INNS, INC., et al.,<br><br>　　　　　　Defendants. | Civil No. 25-13761 (KMW)(EAP) |

### MEMORANDUM ORDER

This matter having come before the Court by way of Plaintiff's Motion to Proceed with Use of a Pseudonym, ECF No. 3; and Defendants having filed a response indicating their consent to Plaintiff's use of a pseudonym through summary judgment proceedings only, ECF No. 18; and the Court deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1; and for good cause shown, the Court finds the following:

**A.   Factual Background**[1]

1.   Plaintiff Jane Doe, a resident of Burlington County, New Jersey, was a trafficked person as defined in the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 7102.  ECF No. 1 ("Compl.") ¶¶ 2, 5.

2.   Defendants Red Roof Inns, Inc.; Red Roof Franchising, LLC; FMI RRI I, LLC; and 603 Fellowship, LLC owned and/or operated various motels and hotels nationwide.  *Id.* ¶¶ 13-31.

3.   According to the Complaint, "the hospitality industry plays a crucial role in the sex trade," where hotels profit from "their reputations as havens of privacy and discretion for sex trafficking offenders."  *Id.* ¶ 40.  "Hotels that offer anonymity and non-traceability through cash

---

[1] The Court takes these factual allegations from Plaintiff's Complaint.

payments and loose registration terms for use of their property[] are often wrought with criminal activity generally and sex trafficking particularly." *Id.* The Complaint asserts that sex traffickers "use hotels as the hub of their operations. Inside the privacy afforded by hotel walls, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex." *Id.* ¶ 42. The Complaint further contends that "[f]rom check-in to check-out, there are several indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking either at a single owned property or at multiple properties under their flag." *Id.* ¶ 50. Plaintiff contends that hotel brands, like the Defendants here, are major players in the sex trafficking industry. *Id.* ¶¶ 58-64.

   4. According to the Complaint, in May 2014, Plaintiff Jane Doe was a seventeen-year-old minor grieving her mother's recent death and facing homelessness. *Id.* ¶ 74. Plaintiff alleges that while she was walking to a store near the Red Roof Inn on Fellowship Road in Mount Laurel, New Jersey, Plaintiff met Stanton Krogulski ("Krogulski"), who presented himself as friendly man offering companionship. *Id.* ¶¶ 75-76.

   5. Within days of meeting Plaintiff, Krogulski began grooming and manipulating Plaintiff, coercing her into sex trafficking from May 2014 until she escaped in mid-August 2015. *Id.* ¶ 76. Plaintiff alleges that Krogulski initially gave her money to foster dependency and exploit her homelessness. *Id.* ¶ 77. When Plaintiff resisted, Krogulski became violent. *Id.* During that time, "Krogulski used physical violence, verbal abuse, threats, and drugs . . . to force her compliance." *Id.* ¶ 78. Krogulski also threatened to "blow [her] fucking head off" if she spoke out or attempted to leave, a threat she believed because he owned firearms. *Id.* ¶ 79. "Krogulski constantly monitored Plaintiff, never letting her out of his sight." *Id.* ¶ 80.

6. Plaintiff alleges that Krogulski trafficked Plaintiff at the Red Roof Inn approximately thirty to fifty times, forcing her to engage in sexual acts with two to three men daily, sometimes back-to-back, with men waiting outside the room or in cars. *Id.* ¶ 81. Krogulski checked into the Red Roof Inn himself or used other women he trafficked to reserve rooms, as Plaintiff was a minor during the first few weeks of her trafficking. *Id.* ¶ 82.

7. According to the Complaint, Plaintiff, who was visibly a teenager, passed the front desk to access rooms, and "it was evident to [Defendants'] staff that Krogulski, an aggressive white male, was trafficking women, as he frequently reserved rooms and was seen with multiple half-dressed Black women who appeared battered, scared, or submissive." *Id.* ¶ 83. Plaintiff further alleges that she witnessed Krogulski physically assault another trafficking victim, and that both were forced to perform sexual acts in the same room with multiple men. *Id.* ¶ 84.

8. The Complaint asserts that Defendants' staff witnessed overt signs of trafficking, including Krogulski's verbal abuse, frequent room changes, cash payments for extended stays, large quantities of condoms in rooms, and multiple men visiting the same rooms daily, in a specific wing of the hotel. *Id.* ¶¶ 86-87. Plaintiff contends that Defendants "financially benefited from and participated in Plaintiff's trafficking." *Id.* ¶ 88.

9. Plaintiff asserts that as a result of her trafficking, she has "endured profound and lasting trauma." *Id.* ¶ 90. She further contends that "[d]espite . . . obvious indicators of illegal activity and sex trafficking, Red Roof Defendants failed to take any steps to alert the authorities, properly intervene, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sex trafficking on their properties." *Id.* ¶ 109.

10. On July 25, 2025, Plaintiff filed a Complaint against Defendants alleging violation of the TVPRA, 18 U.S.C. § 1595.

11. Plaintiff now moves for an order to proceed with the use of a pseudonym. *See* ECF No. 3. Defendants do not oppose Plaintiff's request to proceed under a pseudonym for purposes of pretrial public filings but assert that, prior to any trial, Plaintiff should be required to renew her motion on a full record. ECF No. 18. "[B]ecause a motion for leave to proceed under pseudonym intrudes on the public's right of access to judicial proceedings, the Court cannot grant the motion as unopposed without further analysis." *Doe v. Drexel Univ.*, No. 23-3555, 2023 WL 8373166, at *1 (E.D. Pa. Dec. 4, 2023).

**B.    Legal Standard**

12. "'[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public.'" *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Daubney v. Cooper*, 109 Eng. Rep. 438, 441 (K.B. 1829); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). Federal Rule of Civil Procedure 10(a) embodies that principle by "requir[ing] parties to a lawsuit to identify themselves in their respective pleadings." *Id.* at 408 (citing Fed. R. Civ. P. 10(a); *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)). "A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'" *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)).

13. Nonetheless, courts have recognized that "in exceptional cases," a party may proceed anonymously. *Id.* "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality,'" *id.* at 408 (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)), as well as "cases involving victims of sexual assault," *Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 3962268, at *2 (D.N.J. July 13, 2020) (citations omitted).

14. The Third Circuit Court of Appeals has set forth a "non-exhaustive, multi-factor test" to be used in determining whether a plaintiff's "reasonable fear of severe harm" merits an exception

4

to "'the public's common law right of access to judicial proceedings.'" *Doe v. Coll. of N.J.*, 997 F.3d 489, 495 (3d Cir. 2021) (quoting *Megless*, 654 F.3d at 408)). The factors in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Coll. of N.J.*, 997 F.3d at 495 (quoting *Megless*, 654 F.3d at 409).

15.  The factors "advising against anonymity" include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Megless*, 65 F.3d at 409).

16.  Ultimately, "[t]he *Megless* factors require a fact-specific, case-by-case analysis." *Id.* "Decisions regarding whether to allow a party to proceed under a pseudonym are consigned to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Homesite Ins. Co. of the Midwest v. Ewideh*, No. 22-1664, 2023 WL 426923, at *2 (M.D. Pa. Jan. 26, 2023).

**C.   Analysis**

17.  Applying the above standard, the Court finds that the *Megless* factors substantially weigh in favor of granting Plaintiff's Motion to Proceed with Use of a Pseudonym.


18.  Turning initially to the factors weighing in favor of anonymity, the Court must <u>first</u> consider the extent to which Plaintiff's identity has been kept confidential. *Megless*, 654 F.3d at 409. Plaintiff contends that "she has taken deliberate steps to protect her identity by filing under a pseudonym." ECF No. 3-1 (Pls.' Mem.) at 7. Nothing in the record before the Court suggests that Plaintiff has ever publicly disclosed her identity in connection with this matter. As such, this factor weighs in favor of Plaintiff's requested relief.

19.  <u>Second</u>, Plaintiff has established a reasonable fear of harm from the public disclosure of her name. Courts in the Third Circuit have repeatedly allowed victims of sexual assault to proceed under a pseudonym due to a reasonable fear of harm from disclosure of their identities. *See, e.g.*, *Doe v. Phila.*, No. 23-0342, 2023 WL 4110064, at *3 (E.D. Pa. June 21, 2023) (holding that plaintiff's "fear of substantial public stigmatization and backlash . . . given her detailed allegations of sexual assault at the hands of a law enforcement agent" weighed in favor of anonymity); *Doe v. Schuylkill Cnty. Courthouse*, No. 21-477, 2022 WL 1424983, at *8 (M.D. Pa. May 5, 2022) (finding that fear of stigmatization and ongoing embarrassment and humiliation is "a consideration which has been held to weigh in favor of anonymity for plaintiffs who have alleged they were sexually harassed or assaulted"); *Doe v. Lund's Fisheries, Inc.*, No. 20-11306, 2020 WL 6749972, at *2 (D.N.J. Nov. 17, 2020) (finding that plaintiff's status as an alleged victim of sexual assault demonstrates "substantial grounds to support his fear of public disclosure"); *Princeton Univ.*, 2020 WL 3962268, at *3 (granting motion to proceed under a pseudonym where plaintiff was alleged victim of sexual assault and noting that "victims of sexual assault have been deemed members of a vulnerable class worthy of protected status"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting motion to proceed under pseudonym where plaintiff claimed to have been sexually assaulted by defendant state trooper).

20. Here, Plaintiff has alleged that she was the victim of sex trafficking that occurred over the course of more than a year. Compl. ¶ 76. She contends that her alleged trafficker used physical and mental abuse, drugs, and money to force her into these situations. *Id.* ¶¶ 77-80. Plaintiff asserts that disclosure of her identity her "would cause significant psychological harm, jeopardize her safety, and risk irreparable damage to her personal and professional life. It could adversely affect her employment, relationships, and future opportunities, forcing her to live under the permanent shadow of public identification as a trafficking victim." ECF No. 3-1 (Pl.'s Mem.) at 7. Given the reasonable and well-founded fear of ongoing stigmatization, trauma, embarrassment, and humiliation to Plaintiff, anonymity is appropriate.

21. <u>Third</u>, the Court must consider the "magnitude of the public interest in maintaining the confidentiality of the litigant's identity[.]" *Megless*, 654 F.3d at 409 (quotation omitted). This factor supports anonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated[]" if they could not proceed pseudonymously. *Id.* There is a "public interest in preserving the courage to sue." *Del. Valley Aesthetics, PLLC v. Doe 1*, No. 20-456, 2021 WL 2681286, at *2 (E.D. Pa June 30, 2021); *see also Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019) ("There is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs."); *Doe v. Oshrin*, 299 F.R.D. 100, 104 (D.N.J. May 28, 2014) (citing *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights")).

22. According to the Complaint, Plaintiff was only one of multiple minor girls in the sex trafficking ring. *Id.* ¶¶ 83-84, 106. Plaintiff provides allegations to suggest that other individuals may have the same causes of action. *Id.* ¶¶ 100-01. Absent an ability to proceed anonymously, other

7

similarly-situated victims may be discouraged from pursuing lawsuits. Therefore, this factor also weighs in favor of anonymity.

23. Fourth, the Court must examine the public's interest, if any, in ascertaining Plaintiff's identity. *See Megless*, 654 F.3d at 409 (quotation omitted). Both Plaintiff and Defendants here are private citizens litigating highly-sensitive issues, thus attenuating any public interest. Moreover, the public's ability to monitor the litigation will remain unimpeded since Plaintiff's Motion only seeks to allow her to maintain confidentiality over her own identity. The remainder of the docket will remain public. As such, the use of a pseudonym will "not interfere with the public's right or ability to follow the proceedings." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997).

24. Fifth, the Court must consider the "undesirability of an outcome adverse to the pseudonymous party and attributable to [the party's] refusal to pursue the case at the price of being publicly identified[.]" *Megless*, 654 F.3d at 409 (quotation omitted). Here, Plaintiff has proffered that requiring her to disclose her identity "would undermine the very purpose of this action and retraumatize Plaintiff by placing her back in the vulnerable position she sought to escape." ECF No. 3-1 (Pl.'s Mem.) at 7. Giving credence to this allegation, the Court finds the fifth factor favors anonymity. *See Oshrin*, 299 F.R.D. at 104 (finding fifth *Megless* factor satisfied by a complaint's proffer that plaintiff's willingness to pursue her claims would be inhibited by denial of anonymity).

25. Finally, the last *Megless* factor in favor of anonymity asks "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Megless*, 654 F.3d at 409 (quotation omitted). As Plaintiff has provided the Court with valid reasons in support of her request to proceed anonymously, and Defendants have put forth no allegations or evidence of any nefarious motives, this factor has no bearing on the Court's analysis.

26. Turning next to the *Megless* factors that weigh against anonymity, the Court finds that these factors "do not tip the balance" against Plaintiff's Motion. *Rutgers*, 2019 WL 1967021, at *4.

27. <u>First</u>, although there is a "universal public interest in access to the identities of litigants," *Megless*, 654 F.3d at 411, "this interest exists in some respect in all litigation and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. July 14, 2006).

28. <u>Second</u>, the Court must consider "whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained[.]" *Megless*, 654 F.3d at 409 (quotation omitted). There is not. "[T]he subject matter of this litigation [sexual assault] is common . . . [and] Plaintiff is not a public figure," thus creating no heightened public interest. *Doe v. New Jersey*, No. 24-9531, 2024 WL 4880260, at *4 (D.N.J. Nov. 25, 2024).

29. <u>Finally</u>, the Court notes that neither the Defendants, the public, nor the press have expressed opposition to Plaintiff's Motion. Therefore, this factor has no bearing on the analysis.

30. Overall, the Court finds that the balance of the *Megless* factors weighs heavily in favor of allowing Plaintiff to proceed through the use of a pseudonym. The delicate factual circumstances alleged in this case, combined with the lack of any particularly enhanced public interest in the litigants, outweigh the importance of fully open judicial proceedings.

31. Nevertheless, the Court takes note of Defendants' request that any leave to proceed under a pseudonym be granted only through summary judgment proceedings and not extended to trial without a renewed motion by Plaintiff. *See* ECF No. 18 (Defs.' Resp.) at 2. Defendants assert that "the impact and outcome of the *Megless* factors has the potential to drastically shift when evaluated on a full record following discovery and when considered for trial—rather just in pre-trial

public filings." *Id.* Cognizant of the ever-present presumption in favor of public judicial proceedings, the Court agrees with Defendants' position and will require Plaintiff to renew her request prior to trial.

**THEREFORE,**

    **IT IS** this **5th** day of **November 2025**,

    **ORDERED** that Plaintiff's Motion to Proceed with Use of a Pseudonym is **GRANTED**; and it further

    **ORDERED** that Plaintiff may proceed anonymously through summary judgment proceedings; and it is further

    **ORDERED** that, if necessary, Plaintiff may renew her request to proceed by pseudonym prior to any trial in this matter.

                                                                                                s/Elizabeth A. Pascal
                                                                            ELIZABETH A. PASCAL
                                                                            United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.